15

BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
Chang@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

Gregory F. Vizza (*pro hac vice* pending)
Vizza@BlankRome.com
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:   215.569.5500
Facsimile:    215.569.5555

*Attorneys for Interested Party,*
*Bimbo Bakeries USA, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| In re: | Case No. 19-15277-B-11 |
| SVENHARD'S SWEDISH BAKERY, | DC No. BR-001 |
| Debtor and Debtor in Possession. | Chapter 11 |
| | **REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE** |
| | Date:       February 25, 2020 |
| | Time:       9:30 a.m. |
| | Dep't:      B |
| | Location:  Robert E. Coyle U.S. Courthouse 2500 Tulare Street, Suite 2501, Courtroom 13 Fresno, CA 93721 |

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION**
**FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ........................................................................................................ 2

    A. Bimbo's Motion Requests a Determination that the Debtor Holds the Funds in Trust ........................................................................................................ 2

    B. Bimbo Has Standing as Owner of the Funds to Demand Their Turnover ............... 2

    C. There is no Mutuality to Support the Debtor's Alleged Setoff Rights Against Bimbo and CCBC ........................................................................................ 4

    D. The Funds Were Transferred to the Debtor By Mistake After Its Operations Were Taken Over by the CCBC ............................................................... 6

    E. The Funds Are Traceable Because the Debtor's Filings Establish That They Remain in Its General Operating Account ................................................. 8

    F. Returning Property Owned by Bimbo That Was Never Property of the Estate Will Not Violate the Bankruptcy Code's Priority Scheme ..................................... 9

III. CONCLUSION .................................................................................................. 11

i

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biggs v. Stovin (In re Luz Int'l, Ltd.)*,
    219 B.R. 837 (B.A.P. 9th Cir. 1998) ............................................................................... 4,5

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019) ............................................ 8

*Faasoa v. Army & Air Force Exch. Serv. (In re Faasoa)*,
    576 B.R. 631 (Bankr. S.D. Cal. 2017) ................................................................................ 5

*Golden Mortg. Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.)*,
    171 B.R. 79 (B.A.P. 9th Cir. 1994) .................................................................................. 10

*In re Charlton*,
    389 B.R. 97 (Bankr. N.D. Cal. 2008) ............................................................................... 10

*Mitsui Manufacturers Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*,
    13 F.3d 321 (9th Cir. 1994) ...................................................................................... 2, 3, 10

*Newbery Corp. v. Fireman's Fund Ins. Co.*,
    95 F.3d 1392 (9th Cir. 1996) .............................................................................................. 4

*Sobel Bldg. Dev. Partners v. Broach (In re Sexton)*,
    166 B.R. 421 (Bankr. N.D. Cal. 1994) ..................................................................... 2, 3, 4, 5

*Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*,
    178 B.R. 480 (B.A.P. 9th Cir. 1995), *aff'd*, 104 F.3d 293 (9th Cir. 1997) .................. 3, 8, 9

*Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)*,
    645 F.2d 794 (9th Cir. 1981) .............................................................................................. 5

*United States v. Pegg*,
    782 F.2d 1498 (9th Cir. 1986) ....................................................................................... 3, 10

*Weststeyn Dairy 2 v. Eades Commodities Co.*,
    280 F. Supp. 2d 1044 (E.D. Cal. 2003) .............................................................................. 3

*Zavala v. Kruse-W., Inc.*,
    398 F. Supp. 3d 731 (E.D. Cal. 2019) ................................................................................ 8

**Statutes**

Cal. Civ. Code § 2223 ............................................................................................................ 3, 4

ii

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

Cal. Civ. Code § 2224 ................................................................................................................3

California Civil Code Sections 2223 and 2224 ...................................................................... 2, 3

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION
FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

In further support of *Bimbo Bakeries USA, Inc.'s Motion for Turnover of Funds Held by the Debtor That Are Not Property of the Estate* [Docket No. 42] (the "Motion")[1] and in response to the *Debtor's Opposition to Bimbo Bakeries USA, Inc.'s Motion for Turnover of Funds Held by the Debtor That Are Not Property of the Estate* [Docket No. 65] (the "Opposition"), Bimbo Bakeries USA, Inc. ("Bimbo") files this reply and respectfully states as follows:

## I.     INTRODUCTION

The Debtor is wrongfully withholding $732,943.92 Bimbo mistakenly transferred to the Debtor prior to the Petition Date. The Debtor should have either returned the Funds to Bimbo before it filed for bankruptcy, i.e., when it received the payments knowing that it had ceased operations and did not provide any goods or services to Bimbo for which payment was due, or agreed to a consent order after the Petition Date when it received Bimbo's letter requesting turnover. Instead, the Debtor never alerted Bimbo of any of the thirty payments it received in error and now asserts these funds should secure setoff rights against both a single $29,881.34 invoice allegedly owed to it by Bimbo, and the Debtor's contingent, unliquidated, and unasserted claims against CCBC, one of Bimbo's creditors.

After forcing Bimbo to seek relief from this Court in a matter that already should have been resolved without the need for litigation, the Debtor is trying to further delay returning the Funds to Bimbo. The Debtor's myriad arguments are baseless and serve only to waste estate resources. The Funds belong to Bimbo, not the Debtor. The Debtor cannot setoff against property that should be held in constructive trust because there is no mutuality of debts; it cannot hijack the Funds to fund litigation against a third party or secure its claim against a third party that does not have (and has not asserted) an interest in the Funds; and it cannot hide the Funds after its own filings with this Court conclusively demonstrate they remain untouched in its general operating account. Accordingly, the Funds must be excluded from the estate and turned over to Bimbo.

---

[1] Initially capitalized terms used, but not defined herein shall have the meanings given to them in Bimbo's *Memorandum of Points and Authorities* [Docket No. 43] filed in support of the Motion.

1

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION
FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

1 **II. ARGUMENT**

2     **A. Bimbo's Motion Requests a Determination that the Debtor Holds the Funds in**
3         **Trust.**

4     The Debtor's argument that Bimbo's Motion should have requested both that the Court
5 impose a constructive trust over the Funds in favor of Bimbo and order the Debtor to turn over
6 the Funds to Bimbo makes a distinction without a difference. Bimbo's Motion asserts that the
7 Funds should be held in trust, discusses the law governing when and how constructive trusts
8 arise and are imposed, and alleges facts supporting the relief requested. Bimbo's Motion
9 necessarily requests a determination that the Funds are held in trust. The Debtor's form-over-
10 substance argument does not establish grounds for denial of Bimbo's Motion.

11     **B. Bimbo Has Standing as Owner of the Funds to Demand Their Turnover.**

12     The Debtor makes a baseless argument that Bimbo lacks standing because Central
13 California Baking Company ("CCBC") is the equitable owner of the trust. CCBC is Bimbo's
14 creditor with a right to payment from Bimbo *generally*, not a right to payment from the Funds
15 specifically. Indeed, the Debtor's own citation undermines its argument: "only the equitable
16 owner of the trust res may obtain a constructive trust, **not a creditor of the equitable owner**."
17 *See Sobel Bldg. Dev. Partners v. Broach (In re Sexton)*, 166 B.R. 421, 425 (Bankr. N.D. Cal.
18 1994) (emphasis added) (citing Cal. Civ. Code §§ 2223–24). Bimbo owns the Funds and the
19 identity of the intended recipient of the Funds is irrelevant, particularly where the intended
20 recipient is Bimbo's creditor.

21     The Debtor's citation to California Civil Code Sections 2223 and 2224 is also a red
22 herring. Bimbo's request for relief is founded on those statutes, which form the basis for the
23 legal principles discussed in *Mitsui Manufacturers Bank v. Unicom Computer Corp. (In re*
24 *Unicom Computer Corp.)*, 13 F.3d 321 (9th Cir. 1994). *See Mitsui*, 13 F.3d at 325 ("California
25 law provides for the imposition of a constructive trust in a situation involving simple negligence
26 on the part of a debtor who wrongfully detains another's property. *See* Cal.[ ]Civ.[ ]Code §§

27

28

2

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION
FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

1 2223, 2224 . . . ."). Bimbo cites and relies upon *Mitsui* in its *Memorandum of Points and Authorities*.

Sections 2223 and 2224 merely "codified the definition of a constructive trust" under California law.[2] *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 178 B.R. 480, 486 (B.A.P. 9th Cir. 1995), *aff'd*, 104 F.3d 293 (9th Cir. 1997). "[I]n order to provide the necessary flexibility for applying an equitable doctrine to individual cases, sections 2223 and 2224 must be interpreted as stating *general principles for a court's guidance*." *United States v. Pegg*, 782 F.2d 1498, 1501 (9th Cir. 1986) (emphasis added). The distinction between the two sections is immaterial when analyzing Bimbo's request for relief (although Bimbo's entitlement arises under Section 2223 as the owner of the Funds).[3] Under both sections, the standard for imposition of a constructive trust is the same—"[a] constructive trust may be imposed where the court finds: (1) the existence of a res (property or some interest in property); (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it." *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1084 (E.D. Cal. 2003).

Bimbo has proven each of these three elements. First, the existence of the trust res is undisputed. The Debtor is holding the Funds in its deposit account. Second, Bimbo is plainly the equitable owner of the funds for the uncontroverted reasons set forth in the Motion. The Debtor's only argument to dispute this element alleges Bimbo is not the equitable owner of the Funds because they were intended to be paid to CCBC. As discussed above, however, CCBC is

---

[2] Section 2223 provides, in full: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2223. Section 2224 provides, in full: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ. Code § 2224.

[3] *See also, e.g.*, *Sobel*, 166 B.R. at 425 n.2 ("The difference between the wording of these two statutes—§ 2223 applying when property is wrongfully 'detained' . . . § 2224 applying when property is wrongfully 'gained'—is presumably based on the conclusion that it would be inappropriate to call one seeking to impose a constructive trust on property wrongfully 'gained' by another the 'owner' of the property."). However, to the extent the Court determines Bimbo's right to relief instead arises under Section 2224, Bimbo argues it is entitled to relief thereunder in the alternative.

3

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION
FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

a creditor with a right to payment from Bimbo generally and is not entitled to the Funds specifically. *See Sobel*, *supra*. Third, the Debtor is not entitled to detain the Funds because the Funds were sent to the Debtor as a result of a good faith mistake and not as payment for any goods or services provided to Bimbo. Notwithstanding its contrary arguments, the Debtor's detention of the Funds is wrongful, as discussed in detail below. For these reasons, Bimbo has satisfied the standard for this Court to impose a constructive trust over the Funds under Section 2223 and is entitled to its requested relief, including turnover of the Funds.

### C. There is no Mutuality to Support the Debtor's Alleged Setoff Rights Against Bimbo and CCBC.

The Debtor erroneously argues it (1) "has full ownership – legal and equitable – to the funds" and (2) is entitled to detain the Funds based on what appears to be alleged setoff rights against both (a) $29,881.34 allegedly owed to the Debtor by Bimbo and (b) contingent, unliquidated, and unasserted claims against CCBC and its affiliates, including United States Bakery ("USB"). *See* Opp'n 3–4. These arguments fail because in each scenario there is no mutuality of debts between either the Debtor and Bimbo or the Debtor and CCBC/USB.

Setoff "allows entities that owe each other money to apply their **mutual debts** against each other." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (emphasis added). Accepting the Debtor's argument that it owns the Funds undermines any alleged setoff rights against either Bimbo or CCBC/USB because the Debtor's alleged ownership of the Funds cannot constitute a debt to either Bimbo or CCBC/USB. The Debtor cannot setoff the Funds while it purports to hold the Funds for itself as owner rather for the benefit of either Bimbo or CCBC.

However, the Debtor also cannot effectuate a setoff against property that it holds in a constructive trust because (again) there is no mutuality of debts. Mutuality requires that "(1) the debts must be in the same right; (2) the debts must be between the same individuals; and (3) those individuals must stand in the same capacity." *Biggs v. Stovin (In re Luz Int'l, Ltd.)*, 219 B.R. 837, 845 (B.A.P. 9th Cir. 1998). The "capacity" requirement refers to the nature of the

4

1 relationship between the parties. *Id.* at 847–48. "Thus, where a debt arises from a fiduciary duty or is in the nature of a trust, courts have held that there is no mutuality for setoff purposes." *Id.* at 848 (citing *W. Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp., Inc.)*, 473 F.2d 262 (9th Cir. 1973)).[4] Under such circumstances, "setoff will not be permitted [because] granting it would have the effect of excusing or evading the [fiduciary] obligation." *Id.* (quoting 5 *Collier on Bankruptcy*, at 553–35 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.1997)). Accordingly, the Debtor cannot setoff its claims against the Funds because they should be held in constructive trust and permitting the Debtor to effectuate a setoff would allow it to evade its fiduciary obligations.

Even accepting the false premise that the Debtor could setoff its claims against property held in constructive trust, the Debtor's arguments fail. First, the amount of the Funds ($732,943.92) is more than **24-times** greater than the amount of the invoice ($29,881.34) allegedly still outstanding and giving rise to the Debtor's setoff rights against Bimbo. Giving full effect to the Debtor's setoff rights against Bimbo would hypothetically result in the Debtor detaining over 95% of the Funds (i.e., $703,062.58). Second, the Debtor's contingent, unliquidated, and unasserted claims against CCBC/USB are irrelevant. CCBC has nothing more than a general claim against Bimbo (and USB has no claim against Bimbo whatsoever)[5] and has no entitlement to the Funds held by the Debtor in constructive trust for Bimbo's benefit. *See Sobel*, 166 B.R. at 425 (citing Cal. Civ. Code §§ 2223–24) ("[O]nly the equitable owner of the trust res may obtain a constructive trust, not a creditor of the equitable owner."). Thus, the alleged debts are not "between the same individuals" and the Debtor's claims against CCBC/USB cannot be setoff against the Funds. *See Biggs*, 219 B.R. at 845. Tellingly, the

---

[4] *Accord Faasoa v. Army & Air Force Exch. Serv. (In re Faasoa)*, 576 B.R. 631, 638 (Bankr. S.D. Cal. 2017); *see also Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)*, 645 F.2d 794, 797 (9th Cir. 1981) ("[T]here is no mutuality 'when the liability of the one claiming a set-off arises from a fiduciary duty or is in the nature of a trust . . . .'").

[5] Notably, the Debtor's schedules disclose claims only against USB and none against CCBC. If the Debtor only has claims against USB and none against CCBC, the Debtor's setoff argument is further undermined because there are no circumstances in which claims against USB constitute mutual debts vis-á-vis the Funds.

5

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

1 Debtor cites absolutely no case, statute, or other authority supporting either of its arguments,
2 because there is none.

3 　　　Other than its alleged setoff rights, the Debtor presents no defense to Bimbo's arguments
4 that the Debtor is wrongfully withholding the Funds. Indeed, the Debtor did not even attempt to
5 argue that it received the Funds in payment for any goods sold or services rendered, including
6 the allegedly unpaid $29,881.34 invoice. To the contrary, the Debtor's CEO stated under penalty
7 of perjury that the allegedly unpaid invoice "**remained due and owing** from Bimbo Bakeries to
8 the Debtor at the time the case was commenced." *See Declaration of David Kunkel in Support of*
9 *Debtor's Opposition to Bimbo Bakeries USA, Inc.'s Motion for Turnover of Funds Held by*
10 *Debtor That Are Not Property of the Estate* [Docket No. 66] (emphasis added). This statement is
11 both an affirmative acknowledgement by the Debtor that the Funds were not transferred by
12 Bimbo to satisfy any outstanding indebtedness owed to the Debtor and an implied
13 acknowledgement that the Funds were transferred by Bimbo by mistake. The Debtor should not
14 be permitted to continue to withhold any of the Funds, all of which should be turned over to
15 Bimbo.

16 　　　**D.　　The Funds Were Transferred to the Debtor By Mistake After Its Operations**
17 　　　　　　**Were Taken Over by the CCBC.**

18 　　　Unable to establish any entitlement to the Funds, the Debtor attempts to argue Bimbo's
19 payment of $732,943.92 to the Debtor was not a mistake. This argument is implausible on its
20 face. The Debtor stresses that the payments must have been "intentional," but it does not suggest
21 an alternative for Bimbo's intentions when it transferred the Funds. That is because there is no
22 explanation other than that the payments were made by mistake, which is confirmed by a closer
23 examination of the facts leading up to the erroneous payments.

24 　　　Bimbo conducted business with the Debtor, including placing purchase orders for
25 various goods made by the Debtor and paying the Debtor's invoices in the ordinary course, since

26
27
28

6

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION
FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

1 approximately 2010. *See* Suppl. Decl. of Erik Sweezey ¶ 3 (the "Suppl. Decl.").[6] However, on
2 November 3, 2019, the Debtor ceased operating. *See id.* ¶ 4. On November 8, 2019, Marina
3 Nave emailed Bimbo from a Svenhards.com email address attaching a letter indicating that
4 CCBC had assumed possession of the Debtor's former operating facility and taken over its
5 operations. *See id.* On November 14, 2019, Ms. Nave emailed Bimbo attaching a letter
6 providing updated deposit account information for payment of all CCBC invoices dated after
7 November 3, 2019. *See id.*

8 Each of the erroneous payments to the Debtor were made from November 26, 2019 to
9 December 16, 2019. *See id.* ¶ 5. The payments were misdirected to the Debtor during this three-
10 week period because CCBC's invoices were issued using a "Svenhard's" d/b/a and Bimbo's
11 accounts payable system directs ACH payments to the company whose name appears on the
12 invoices being paid. *See id.* Bimbo did not realize the ACH transfers that were intended to
13 satisfy CCBC's invoices were instead directed to the Debtor's deposit account with Central
14 Valley Community Bank ending in x8448 (the "Central Valley Account"), because Bimbo was
15 relying on its accounts payable system that contained incorrect and outdated payment
16 information. *See id.*

17 Upon realizing its mistake on December 16, 2019, Bimbo promptly put a hold on all
18 payments to the Debtor and updated the information in its accounts payable system with the
19 proper payment information for CCBC. *See id.* ¶ 6. At no time during this period were any
20 payments correctly made to CCBC nor did the Debtor alert Bimbo of the erroneous payments.
21 *See id.* Accordingly, it is undeniable that the Funds were transferred to the Debtor by mistake
22 and its wrongful retention of the Funds gives rise to a constructive trust in favor of Bimbo.

---

[6] The *Supplemental Declaration of Erik Sweezey in Further Support of Bimbo Bakeries USA, Inc.'s Motion for Turnover of Funds Held by the Debtor That Are Not Property of the Estate* is filed contemporaneously with this reply and clarifies that Mr. Sweezey is the Senior Director, Regional Finance of Bimbo and that all facts set forth in the Supplemental Declaration and in the original *Declaration of Erik Sweezey in Support of Bimbo Bakeries USA, Inc.'s Motion for Turnover of Funds Held by the Debtor That Are Not Property of the Estate* [Docket No. 63] are based on his personal knowledge, upon information learned from a review of Bimbo's books and records, and upon discussions with certain employees of Bimbo. *See* Suppl. Decl. ¶ 2.

### E. The Funds Are Traceable Because the Debtor's Filings Establish That They Remain in Its General Operating Account.

The Debtor's filings in this case establish that the Funds remain in its "general operating account," where it represents they were deposited when received. *See* Opp'n 5. The Funds can be traced pursuant to the "lowest intermediate balance" rule, which provides:

> [I]f a party mingles wrongfully obtained funds with its own funds, and disbursements are made from the commingled account, there is a presumption that the disbursements were of the party's own money, not trust funds. If the account balance is depleted below the amount held in trust, however, the amount withdrawn is treated as lost; subsequent deposits do not become trust property; and the beneficiary has a trust only as to the amount of the lowest intermediate balance in the account.

*Advent Mgmt.*, 178 B.R. at 492 n.5 (citations omitted); *accord Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 662 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019); *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 741 n.2 (E.D. Cal. 2019).

Pursuant to the lowest intermediate balance test, there is more than enough information in the Debtor's filings in this case to trace the Funds. The Court can take judicial notice of the following:

- The Debtor's Statement of Financial Affairs (the "SOFA") indicate the Debtor did not make any 90-day transfers after it received any of the Funds from Bimbo between November 26, 2019 and December 16, 2019. *See Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* [Docket No. 25] (attached hereto as Exhibit "A").

- The check register attached to the Debtor's SOFA lists no transfers initiated after the Debtor received any of the Funds from Bimbo. *See id.*

8

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

- The Debtor's bankruptcy schedules list three checking accounts, including the Central Valley Account with a balance of $1,539,442.51 as of December 19, 2019 (the "Petition Date") and two other accounts with de minimis balances of $1,660.92 and $3,422.36. *See Schedule A/B: Assets — Real and Personal Property* [Docket No. 24] (attached hereto as Exhibit "B").

- The Debtor is not operating and, as of the date of this filing, has not obtained authority from the Court to use or otherwise make any transfers from property allegedly belonging to the estate.

- The Debtor's monthly operating report for December 2019 confirms it made no payments in December and its cash balance at the end of the month remained unchanged from the Petition Date.[7] *See Chapter 11 Monthly Operating Report* [Docket No. 41] (attached hereto as Exhibit "C").[8]

In sum, the Debtor could not have dissipated the Funds because it has made no payments since receiving them and the balance in its general operating account substantially exceeds the amount of the Funds. Accordingly, the Funds clearly are traceable. *See Advent Mgmt.*, *supra*.

**F. Returning Property Owned by Bimbo That Was Never Property of the Estate Will Not Violate the Bankruptcy Code's Priority Scheme.**

The Debtor's argument that turnover of the Funds would violate the Bankruptcy Code's policy in favor of a ratable distribution to creditors misconstrues the reason the Funds should be subject to a constructive trust. The analysis to determine whether "bankruptcy's policy of ratable distribution outweighs imposition of a trust . . . . focuses on the legal relationship between the

---

[7] Although the Debtor's bankruptcy schedules listed the Central Valley Account, that account does not appear on its December 2019 monthly operating report, which instead lists two accounts with Wells Fargo Bank, including a general purpose account with a balance of $1,539,467.81 (the "Wells Fargo Account"). It is unclear why the Debtor opened new bank accounts post-petition and under what authority it did so. It is clear, however, that the Debtor's transfer of the deposits from the Central Valley Account to the Wells Fargo Account (the Wells Fargo Account has a marginally higher balance than the Central Valley Account) does not affect Bimbo's ability to trace the Funds.

[8] The Debtor has not yet filed its reports for January and February. As the Debtor has not obtained authority to use or otherwise make any transfers from property allegedly belong to the estate, those reports should also confirm the Debtor has made no payments.

9

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION
FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**

1 parties." *Golden Mortg. Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.)*, 171 B.R.
2 79, 82 (B.A.P. 9th Cir. 1994). Thus:

> If imposition of a constructive trust is warranted under state law, and *if the basis for the constructive trust is that [the] debtor did not have a beneficial interest in the property in question as of the petition date* (because the debtor obtained the property by theft, fraud, mistake, or upon the implied or express understanding that the debtor held the property for another), then a constructive trust may be imposed post-petition, **removing the property from the bankruptcy estate**.

*In re Charlton*, 389 B.R. 97, 102 (Bankr. N.D. Cal. 2008) (citing *Mitsui Mfrs. Bank v. Unicom Comput. Corp. (In re Unicom Comput. Corp.)*, 13 F.3d 321, 325 (9th Cir. 1994) (second emphasis added). Alternatively, "[i]f the debtor was the beneficial owner of the property in question as of the petition date, and *a constructive trust is sought as a remedy for debtor's failure to fulfill some obligation,* then the claim for constructive trust pending on the petition date" must be weighed against the interests of the debtor's creditors. *See id.* at 103 (emphasis in original).

This creates a "predicable rule." *Golden Triangle Capital*, 171 B.R. at 82. "If no debtor-creditor relationship exists, a trust will exclude property from the estate" without reference to the policy of ratable distribution. *Id.* (citing *Mitsui*, 13 F.3d at 325). "If, on the other hand, the trust is imposed as a remedy for a claim, circumstances may warrant treating the claimant as any other creditor of the debtor, and thus subject to the policy of ratable distribution." *Id.*

As discussed above, the Debtor has never had a beneficial interest in the Funds. Bimbo did not transfer the Funds to the Debtor to satisfy a debt owed to the Debtor and Bimbo is not seeking imposition of a constructive trust as a remedy to some obligation the Debtor has failed to fulfill. It simply requests turnover of Funds transferred to the Debtor by mistake, which gives rise to a constructive trust under controlling Ninth Circuit law. *See, e.g.*, *Mitsui*, 13 F.3d at 325; *Pegg*, 782 F.2d at 1501. Accordingly, the Court should determine the Funds are being held by

1 the Debtor in constructive trust for Bimbo's benefit and, therefore, the Funds do not constitute
2 property of the estate.

3 Finally, the Debtor's argument that "imposition of a constructive trust would deny the
4 Debtor's creditors meaningful recovery in favor of CCBC and its affiliates" is illogical and
5 simply wrong. *See* Opp'n 5. After turning over the Funds to Bimbo, the Debtor can still pursue
6 its alleged claims against CCBC and use the proceeds of those claims to fund distributions to its
7 creditors. The Debtor cannot improperly use the Funds to finance its litigation against CCBC
8 and secure an otherwise unsecured claim against CCBC with trust funds owned by Bimbo.

## III. CONCLUSION

For the reasons discussed above, the Court should determine that the Funds are being held by the Debtor in constructive trust for the benefit of Bimbo and Bimbo's Motion for turnover of the Funds should be granted.

Dated: February 18, 2020

BLANK ROME LLP

By: */s/ Cheryl S. Chang*
    Cheryl S. Chang
    Gregory F. Vizza

*Attorneys for Interested Party,*
*Bimbo Bakeries USA, Inc.*

11

**REPLY IN FURTHER SUPPORT OF BIMBO BAKERIES USA, INC.'S MOTION FOR TURNOVER OF FUNDS HELD BY THE DEBTOR THAT ARE NOT PROPERTY OF THE ESTATE**